# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| LOWER, LLC, § § | |
| *Plaintiff,* § § | Civil Action No. 4:23-cv-685 |
| v. § § | Judge Mazzant |
| AMCAP MORTGAGE, LTD., et al., § § | |
| *Defendants.* § § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Jason Ozment's Motion to Compel Arbitration (Dkt. #29). Defendant Amcap Mortgage, Ltd. filed its Second Corrected Joinder in Jason Ozment's Motion to Compel Arbitration (Dkt. #32). Defendants Kristen Mastrorilli and Ron Hankins also filed their Joinder in Jason Ozment's Motion to Compel Arbitration (Dkt. #45). Having considered the relevant pleadings, the Court hereby **ORDERS** that Defendants' Jason Ozment, Kristen Mastrorilli and Ron Hankins Motions are **GRANTED**. The Court further **ORDERS** that Defendant Amcap Mortgage, Ltd.'s Motion is **DENIED** in part.

Additionally, Defendants Kristen Mastrorilli, Ron Hankins and Natalie Boyd filed their Request for Expedited Ruling on Jason Ozment's Motion to Compel Arbitration (Dkt. #53). Defendant Jason Ozment also filed his Corrected Emergency Request for Ruling on Motion to Compel Arbitration (Dkt. #69). However, having considered the motions and the relevant pleadings, the Court hereby **ORDERS** that Defendants' Motions are **DENIED** as moot.

# BACKGROUND

## I. Factual Background

Plaintiff Lower, LLC ("Lower") offers residential mortgage loans and refinancing products for potential home buyers and current homeowners (Dkt. #1 at p. 1). Defendants Jason Ozment ("Ozment"), Kristen Mastrorilli ("Mastrorilli"), Ron Hankins ("Hankins"), and Natalie Boyd ("Boyd") are former employees (collectively, the "Former Employees") of Lower (Dkt. #1 at p. 4). During their tenure at Lower, the Former Employees worked together in Lower's Plano, Texas office (Dkt. #1 at p. 10). Ozment is now employed by Defendant Amcap Mortgage, Ltd. ("Amcap") (Dkt. #1 at p. 3).

### A. Factual Background Specific to Ozment

Ozment was hired by Lower as Branch Manager and Vice President in April of 2021 (Dkt. #1 at p. 6). At that time, the parties executed a "Branch Manager, VP Employment Agreement" effective as of April 13, 2021, which was superseded by the "Branch Manager, VP Employment Agreement" effective as of September 1, 2021 ("Ozment Employment Agreement") (Dkt. #1 at p. 6). Section 6.7 of the Ozment Employment Agreement contains an arbitration clause stating the following:

> With the exception of claims by the Employer against Employee for injunctive relief and related damages asserted by the Employer, Employee agrees that any and all disputes, controversies, claims, or differences between the Employer and Employee that directly or indirectly relate to or arise out of Employee's employment with the Employer or out of this Agreement or its breach, shall be arbitrated by JAMS….
>
> The claims, disputes, and controversies covered by Section 11 [*sic*][1] include, without
> limitation, any claims, disputes, or controversies (a) that directly or indirectly relate

---

[1] Ozment indicates that this is a typographical error in the Ozment Employment Agreement (*See* Dkt. #29 at p. 3). Therefore, the Court presumes this provision is referring to Section 6.7 of the Ozment Employment Agreement because there is no Section 11 (*See* Dkt. #29-2).

> to or arise out of Employee's employment with Company or this Agreement, (b) that are based on a tort theory of liability, including defamation, liable, slander, false light, intentional infliction of emotional distress, tortious interference, negligence, assault, battery, invasion of privacy, and any other violation of a legal duty not based in contract that gives rise to damages of whatever nature, ….

(Dkt. #29 at p. 3). On or about September 1, 2021, Lower and Ozment also executed a Mutual Arbitration Agreement ("Ozment Arbitration Agreement") (Dkt. #29 at p. 3). The Ozment Arbitration Agreement provides that, except as provided therein, Lower and Ozment agree to the following:

> [A]ll legal disputes and claims between them shall be determined exclusively by final and binding arbitration. Claims subject to this Agreement include without limitation all claims pertaining to [Ozment's] employment or other relationship with [Lower] (including application for or termination of employment or other relationship or any background check process associated with same) and all claims for discrimination, harassment or retaliation; wages, overtime, or other compensation; breach of any express or implied contract; negligence or other tort; or violation of any federal, state, or local law.

(Dkt. #29-3 at p. 2). Importantly, Section 5 of the Ozment Arbitration Agreement also indicates:

> Except as noted in the following paragraph, the arbitrator, and not any federal, state, or local court, shall have exclusive authority to resolve any dispute relating to the formation, enforceability, applicability, or interpretation of this Agreement, including without limitation any claim that it is void or voidable. The parties waive the right to have a court determining the enforceability of this Agreement

(Dkt. #29-3 at p. 3).

Lower has brought claims against Ozment for breach of fiduciary duty, conspiracy to breach fiduciary duty, tortious interference with current and prospective contractual relationships, trespass, unjust enrichment, fraud, and conspiracy to commit fraud and requests both actual damages and permanent injunctive relief.

### B. Factual Background Specific to Mastrorilli

Mastrorilli was employed by Lower as a loan processor (Dkt. #47 at p. 2). Mastrorilli worked with loan officers to "confirm that potential customers were eligible to receive a loan from Lower and that a loan to potential customers would not create undue risk of harm to Lower" (Dkt. #47 at p. 2).

Mastrorilli, as part of her employment agreement, executed a Mutual Arbitration Agreement ("Mastrorilli Arbitration Agreement") (Dkt. #45-1 at p. 10). The Mastrorilli Arbitration Agreement provides that, except as provided therein, Lower and Mastrorilli agree to the following:

> [A]ll legal disputes and claims between them shall be determined exclusively by final and binding arbitration. Claims subject to this Agreement include without limitation all claims pertaining to [Mastrorilli's] employment or other relationship with [Lower] (including application for or termination of employment or other relationship or any background check process associated with same) and all claims for discrimination, harassment or retaliation; wages, overtime, or other compensation; breach of any express or implied contract; negligence or other tort; or violation of any federal, state, or local law.

(Dkt. #45-1 at p. 8). Importantly, Section 5 of the Mastrorilli Arbitration Agreement also indicates:

> Except as noted in the following paragraph, the arbitrator, and not any federal, state, or local court, shall have exclusive authority to resolve any dispute relating to the formation, enforceability, applicability, or interpretation of this Agreement, including without limitation any claim that it is void or voidable. The parties waive the right to have a court determining the enforceability of this Agreement

(Dkt. #45-1 at p. 9).

Lower has brought claims against Mastrorilli for fraud and conspiracy to commit fraud (Dkt. #1 at p. 27-29).

### C. Factual Background Specific to Hankins

Lower employed Hankins to identify potential customers and work with underwriters to qualify potential customers for a loan (Dkt. #1 at p. 14). Hankins, as part of his employment agreement with Lower, also executed a Mutual Arbitration Agreement ("Hankins Arbitration Agreement") (Dkt. 45-2 at p. 20).

The Hankins Arbitration Agreement provides that, except as provided therein, Lower and Hankins agree to the following:

> [A]ll legal disputes and claims between them shall be determined exclusively by final and binding arbitration. Claims subject to this Agreement include without limitation all claims pertaining to [Hankins'] employment or other relationship with [Lower] (including application for or termination of employment or other relationship or any background check process associated with same) and all claims for discrimination, harassment or retaliation; wages, overtime, or other compensation; breach of any express or implied contract; negligence or other tort; or violation of any federal, state, or local law.

(Dkt. #45-2 at p. 18). Importantly, Section 5 of the Hankins Arbitration Agreement also indicates:

> Except as noted in the following paragraph, the arbitrator, and not any federal, state, or local court, shall have exclusive authority to resolve any dispute relating to the formation, enforceability, applicability, or interpretation of this Agreement, including without limitation any claim that it is void or voidable. The parties waive the right to have a court determining the enforceability of this Agreement

(Dkt. #45-2 at p. 19).

Lower has brought claims against Hankins for fraud and conspiracy to commit fraud (Dkt. #1 at p. 27-29).

### D. Factual Background Specific to Boyd

Boyd was employed by Lower as an underwriter or loan officer[2] (Dkt. #1 at pp. 3–4). Boyd was responsible for confirming that potential customers met eligibility qualifications to receive a

---

[2] Boyd has not submitted an employment agreement or arbitration agreement for review by the Court.

5

loan by Lower (Dkt. #1 at p. 14). Lower has brought claims against Boyd for fraud and conspiracy to commit fraud (Dkt. #1 at pp. 27–29).

### E. Factual Background Specific to Amcap

Amcap now employs Ozment (Dkt. #1 at p. 3). Lower alleges that Amcap and Ozment agreed that Ozment would leave Lower and accept employment with Amcap (Dkt. #1 at p. 11). Lower also alleges that Amcap and Ozment agreed that Amcap would offer employment to the rest of the Former Employees (Dkt. #1 at p. 11). In furtherance of the agreement and plan between Ozment and Amcap, Ozment is said to have removed Lower's confidential and trade secret information (Dkt. #1 at p. 11). Amcap is now benefitting from Ozment's alleged wrongful retention of that information (Dkt. #1 at p. 11).

Lower alleges claims against Amcap for conspiracy to breach fiduciary duty, tortious interference with current and prospective contractual relationships, and unjust enrichment (Dkt. #1 at pp. 20, 22, 25). Lower also requests permanent injunctive relief against Amcap (Dkt. #1 at p. 16). There is no arbitration agreement between Lower and Amcap (*See* Dkt. #1).

## II. Procedural Background

Lower filed the present case against Defendants in this Court on July 27, 2023 (*See* Dkt. #1). On October 5, 2023, Lower submitted a Demand for Arbitration to JAMS indicating its intent to arbitrate additional[3] claims against Ozment (the "Ongoing Arbitration") (Dkt. #29 at p. 2). On October 26, 2023, Ozment filed his Motion to Compel Arbitration (Dkt. #29). On November 7, 2023, Lower filed its Response in Opposition to Defendant Jason Ozment's Motion to Compel

---

[3] The parties dispute whether the claims filed by Lower against Ozment in the arbitration tribunal are different or identical to the claims filed by Lower against Ozment in this Court (*See* Dkt. #29 at p. 2).

Arbitration and Dismiss Jason Ozment from Lawsuit (Dkt. #33). On November 14, 2023, Ozment filed his Reply to Plaintiff's Response to Motion to Compel Arbitration (Dkt. #36).

On October 27, 2023, Amcap filed its Second Corrected Joinder in Jason Ozment's Motion to Compel Arbitration (Dkt. #32). On November 7, 2023, Lower filed its Response in Opposition to Defendant Amcap Mortgage, Ltd.'s Second Corrected Joinder in Jason Ozment's Motion to Compel Arbitration (Dkt. #34). On November 14, 2023, Amcap filed its Joinder in Jason Ozment's Reply to Plaintiff's Response to Motion to Compel Arbitration and Supplement to Reply (Dkt. #37).

On January 3, 2024, Mastrorilli and Hankins filed their Joinder in Jason Ozment's Motion to Compel Arbitration (Dkt. #45). On January 17, 2024, Lower filed its Response in Opposition to Defendants Kristen Mastrorilli and Ron Hankins' Joinder in Jason Ozment's Motion to Compel Arbitration (Dkt. #47). On January 24, 2024, Mastrorilli and Hankins filed their Reply to Response of Lower to Joinder in Jason Ozment's Motion to Compel Arbitration (Dkt. #52).

Mastrorilli, Hankins, and Boyd filed their Request for Expedited Ruling on Jason Ozment's Motion to Compel Arbitration (Dkt. #53) on January 25, 2024. Ozment filed his Corrected Emergency Request for Ruling on Motion to Compel Arbitration (Dkt. #69) on April 29, 2024.

## LEGAL STANDARD

Under the Federal Arbitration Act ("FAA"), parties to a contract may agree that an arbitrator rather than a court will resolve disputes arising out of the contract. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 527 (2019). The FAA provides that written agreements to arbitrate controversies arising out of an existing contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

9 U.S.C. § 2. "The FAA was designed to overrule the judiciary's long-standing refusal to enforce agreements to arbitrate and to place such agreements upon the same footing as other contracts." *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989) (cleaned up). The FAA establishes "a liberal federal policy favoring arbitration agreements" and "requires courts to enforce agreements to arbitrate according to their terms." *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 97 (2012).

Although there is a strong federal policy favoring arbitration, it "does not apply to the determination of whether there is a valid agreement to arbitrate between the parties." *Lloyd's Syndicate 457 v. FloaTEC, L.L.C.*, 921 F.3d 508, 516 n. 5 (5th Cir. 2019) (quoting *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003)). The FAA "does not require parties to arbitrate when they have not agreed to do so." *Volt*, 489 U.S. at 478. Rather, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960). The FAA "simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." *Volt*, 489 U.S. at 478.

When considering a motion to compel arbitration, courts apply a two-step framework. First, the Court must determine "whether the parties entered into any arbitration agreement at all." *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016). "This first step is a question of contract formation only—did the parties form a valid agreement to arbitrate some set of claims." *IQ Prods. Co. v. WD-40 Co.*, 871 F.3d 344, 348 (5th Cir. 2017), *cert. denied*, 138 S. Ct. 2620 (2018). To determine whether there is a valid agreement to arbitrate, courts "apply ordinary state-law principles that govern the formation of contracts." *Webb v. Investacorp, Inc.*, 89 F.3d 252,

Case 4:23-cv-00685-ALM Document 76 Filed 05/30/24 Page 9 of 18 PageID #: 965

258 (5th Cir. 1996). If the Court finds that there is a valid agreement to arbitrate, it proceeds to the second question: whether the claim at issue is covered by the arbitration agreement. *IQ Prods.*, 871 F.3d at 348. In the second step, the Court must determine "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." *Webb*, 89 F.3d at 258 (5th Cir. 1996) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)). This second question usually is for the Court, unless the arbitration clause contains a valid delegation clause for an arbitrator to determine whether the claim falls within the arbitration agreement. *Kubala*, 830 F.3d at 202.

The party seeking to compel arbitration must prove the existence of an agreement to arbitrate by a preponderance of the evidence. *Grant v. Houser*, 469 F. App'x 310, 315 (5th Cir. 2012). Once the Court determines that there is a valid agreement to arbitrate, the strong federal policy favoring the enforcement of the arbitration agreements applies, and all ambiguities must be resolved in favor of arbitration. *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004). As the Supreme Court has stated: "An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986).

## ANALYSIS

I. **The arbitrability of Lower's claims against Ozment, Mastrorilli, and Hankins must be determined by an arbitrator pursuant to the parties' delegation clauses.**

The Supreme Court has instructed that courts must look no further than the arbitrability of a particular claim when determining whether to compel arbitration. Indeed, "courts must examine a complaint with care to assess whether any individual claim must be arbitrated," and

9

"[t]he failure to do so is subject to immediate review." *KPMG LLP v. Cocchi*, 565 U.S. 18, 22 (2011).

However, "parties may agree that the 'gateway' question of arbitrability should be decided by an arbitrator, rather than a court." *See Beaumont Foot Specialists, Inc. v. United Healthcare of Texas, Inc.*, No. 1:15-CV-216, 2015 WL 9703796, at *2 (E.D. Tex. Dec. 22, 2015), *report and recommendation adopted*, No. 1:15-CV-216, 2016 WL 165023 (E.D. Tex. Jan. 14, 2016) (citing *Rent–A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010)). "Pursuant to such a 'delegation' clause, an arbitrator is empowered to determine whether the agreement in fact requires the parties to arbitrate the dispute at hand." *Id.* (citing *Rent–A-Ctr., W., Inc.*, 561 U.S. at 68–69). "[This] is true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019).

In *Rent–A-Center*, the plaintiff argued that because he was required to sign the arbitration agreement as a condition of his employment, the agreement was unconscionable. 561 U.S. at 68–69. The agreement contained the following delegation clause:

> The Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement, including, but not limited to any claim that all or any part of this Agreement is void or voidable.

*Rent-A-Ctr., W., Inc.*, 561 U.S. 63, 66. The Supreme Court held that, pursuant to the delegation clause, "any challenge to the validity of the Agreement as a whole [should be left] for the arbitrator." *Rent–A-Ctr., W., Inc.,* 561 U.S. at 72.

Here, Ozment, Mastrorilli, and Hankins' arbitration agreements with Lower each contain the following provision:

> [T]he arbitrator, and not any federal, state, or local court, shall have exclusive authority to resolve any dispute relating to the formation, enforceability, applicability, or interpretation of this Agreement, including without limitation any claim that it is void or voidable. The parties waive the right to have a court determine the enforceability of this Agreement but may seek a court order delegating such questions to the arbitrator

(Dkt. #29-3 at p. 3; Dkt. #45-1 at p. 9; Dkt. #45-2 at p. 19).[4] This provision is almost identical to the provision at issue in *Rent-A-Center*. It follows, then, that this provision is a valid and enforceable delegation clause. Ozment, Mastrorilli, and Hankins each agreed with Lower that an arbitrator shall make the arbitrability determination.

Lower does not challenge its "assent to the agreement (including the delegation clause)" or argue that the provision does not delegate the issue of arbitrability to the arbitrator. *See Beaumont Foot Specialists*, 2015 WL 9703796, at *2; *see Van Buren v. Pro Se Planning, Inc.*, No. 14–2099, 2014 WL 6485653, at *5 (E.D. La. Nov. 18, 2014) ("[T]he Plaintiff's failure to articulate a specific challenge to the delegation clause requires the Court to abstain from deciding the merits of any dispute concerning enforceability of the arbitration agreement or the underlying contract and refer the matter to arbitration."). Therefore, the Court takes no position on the enforceability or scope of the arbitration clause regarding Lower's claims against Ozment, Mastrorilli, and Hankins. The

---

[4] Ozment raises the presence of this provision for the first time in his Reply brief (*See* Dkt. #36 at p. 1). Amcap, Mastrorilli, and Hankins joined in Ozment's Reply (Dkt. #37; Dkt. #52). "Generally, neither this court nor the district courts of this circuit will 'review arguments raised for the first time in [a] reply brief.'" *RedHawk Holdings Corp. v. Schreiber Tr. of Schreiber Living Tr.*, 836 F. App'x 232, 235 (5th Cir. 2020) (quoting *Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1437 (5th Cir. 1989)); *Springs Indus., Inc. v. Am. Motorists Ins. Co.*, 137 F.R.D. 238, 239 (N.D. Tex. 1991) (district court following the "court's practice of declining to consider arguments raised for the first time in a reply brief"). "On occasion, however, a district court may consider arguments and evidence raised for the first time in a reply brief without abusing its discretion 'so long as it gives the non-movant an adequate opportunity to respond prior to a ruling.'" *RedHawk*, 836 F. App'x at 235 (quoting *Thompson v. Dall. City Attorney's Office*, 913 F.3d 464, 471 (5th Cir. 2019) (internal citations omitted)). Because Lower had the opportunity to file a sur-reply and opted not to, the Court will exercise its discretion and consider the provision. *See* L.R. CV-7(f) ("A sur-reply responding to issues raised in the reply may be served and filed within seven days from the date the reply is served.").

11

arbitrability of these claims should be determined by an arbitrator in accordance with the parties' arbitration agreements.

## II. Lower is not compelled to arbitrate its claims against Amcap at this time.

There is no arbitration agreement between Amcap and Lower. However, Amcap, as a nonsignatory, has moved to compel Lower to arbitrate its claims against Amcap (*See* Dkt. #32). Though there is a valid and enforceable delegation clause in the underlying contract, the Court determines the arbitrability of claims against nonsignatories. *See Newman v. Plains All Am. Pipeline, L.P.*, 23 F.4th 393 (5th Cir. 2022) (Despite the existence of a delegation clause, "[i]t is up to us—not an arbitrator—to decide whether [a nonsignatory] can enforce the [] arbitration agreement."); *see also Moore v. Maverick Nat. Res.*, LLC, No. CV H-20-591, 2020 WL 6431905 (S.D. Tex. Oct. 15, 2020), *report and recommendation adopted*, No. CV H-20-591, 2020 WL 6392854 (S.D. Tex. Nov. 2, 2020) (delegation clause did not expressly state that it applied to claims against nonsignatories, so the court decided arbitrability of claims against nonsignatories) (applying Texas law); *Rivera v. Rent A Ctr., Inc.*, 8th Dist. Cuyahoga No. 101959, 2015-Ohio-3765, 2015 WL 5455882, ¶ 9 (deeming the issue a "proverbial chicken or the egg conundrum," but concluding the court would determine the issue of arbitrability despite existence of delegation clause) (applying Ohio law).

Generally, in order to be subject to arbitral jurisdiction, a party must be a signatory to a contract containing an arbitration clause. *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 353 (5th Cir. 2003). However, a nonsignatory may be bound to submit to arbitration in some circumstances. *Bridas*, 345 F.3d at 355. The Court must first look to "background principles of state contract law, like equitable estoppel," to determine if an arbitration agreement can be enforced against nonsignatories. *Newman*, 23 F.4th at 399.

"[T]raditional principles of state law allow a contract to be enforced by or against nonparties to the contract through . . . estoppel." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009). Ohio[5] state law provides that a nonsignatory may enforce an arbitration agreement against a signatory under some circumstances. Indeed, Ohio has recognized an "alternate estoppel theory" which is "limited to situations where a nonsignatory tries to bind a signatory to arbitration." *I Sports*, 8th Dist. No. 83349, 157 Ohio App.3d 593, 2004-Ohio-3113, 813 N.E.2d 4, ¶ 14. Arbitration may be compelled by a nonsignatory against a signatory when there is a "close relationship between the entities involved, as well as the relationship of the alleged wrongs to the nonsignatory's obligations and duties in the contract . . . and [the fact that] the claims were intimately founded in and intertwined with the underlying contract obligations." *Id.* In other words, "[t]he signatory will be estopped from attempting to avoid arbitration because their claims against the nonsignatory are integrally related to the contract containing the arbitration clause." *U.S. Bank N.A. v. Wilkens et al.*, 8th Dist. Cuyahoga No. 96617, 2012-Ohio-1038, 2012 WL 892898, ¶ 54. However, "arbitration agreements apply to nonsignatories only in rare circumstances." *I Sports*, 8th Dist. No. 83349, ¶ 14 (citing *Westmoreland v. Sadoux*, 299 F.3d 462, 465 (5th Cir. 2002)

---

[5] Ozment, Mastrorilli, and Hankins' employment agreements each contain a choice of law provision providing that the laws of the State of Ohio apply (Dkt. #29-2 at p. 11; Dkt. #45-1 at p. 6; Dkt. #45-2 at p. 15). "A federal court is required to follow the choice of law rules of the state in which it sits." *Resolution Tr. Corp. v. Northpark Joint Venture*, 958 F.2d 1313, 1318 (5th Cir. 1992) (citing *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). "Under the Texas rules, in those contract cases in which the parties have agreed to an enforceable choice of law clause, the law of the chosen state must be applied." *Id.* (citing *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 678 (Tex. 1990)). No party disputes whether the employment agreements or choice of law clauses are enforceable. Thus, Texas choice of law rules apply, and Ohio law supplies the elements of each of Lower's causes of action. Accordingly, the Court will apply Ohio state law in determining whether Amcap can compel Lower to arbitrate its claims. *See Hurley v. Emigrant Bank*, No. 3:19-CV-0011-B, 2019 WL 5537330, at *4 (N.D. Tex. Oct. 25, 2019) (where there was a Delaware choice-of-law provision in the underlying agreement, Delaware law governed whether a nonsignatory could compel a signatory to arbitrate under an equitable estoppel theory).

Though Amcap and Lower have no direct agreement to arbitrate, Ozment and Lower do in the Ozment Employment Agreement. Therefore, the Court must analyze whether Lower's claims against Amcap are integrally related to the Ozment Employment Agreement. Lower alleges claims against Amcap for conspiracy to breach fiduciary duty, tortious interference with current and prospective contractual relationships, and unjust enrichment (Dkt. #1 at pp. 20, 22, 25). Lower also requests permanent injunctive relief against Amcap (Dkt. #1 at p. 16).

In Ohio, "[w]here estoppel has been extended to 'intertwined claims,' it is generally applied in two circumstances: (1) where a signatory must rely on the terms of the written agreement in asserting claims against a nonsignatory and (2) where the signatory alleges substantially interdependent misconduct by both the nonsignatory and one or more signatories to the contract." *I Sports*, 8th Dist. No. 83349, ¶¶ 16, 17, 20 (quoting *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 527 (5th Cir. 2000)). "Whether equitable estoppel should be applied will turn on the facts of each case." *Id.* (quoting *Grigson*, 210 F.3d at 527.).

Under the first circumstance, "[i]t is not sufficient that the plaintiff's claims touch matters concerning the agreement or that the claims are dependent upon the agreement." In *I Sports*, the Ohio court explained this distinction. *See I Sports*, 8th Dist. No. 83349. There, the plaintiff brought a claim for interference with contractual relations. *Id.* The court held that the claim did not arise out of the agreement at issue. *Id.* Rather, the claim merely related to alleged actions by the nonsignatories that "affected the business relationship and obligations created by the agreement between the two signatories." *Id.* The court specifically explained that "[t]his distinction is important. [The plaintiff] does not need to rely upon terms within the agreement to assert its

14

claims, but, instead, its claims are dependent upon the business relationship created by the agreement." *Id.* Therefore, the plaintiff's claim was not intertwined with the agreement. *Id.*

Similarly here, Lower has brought a claim against Amcap for tortious interference with current and prospective contractual relationships. Based on the reasoning in *I Sports*, the Court concludes that this claim against Amcap is not intertwined with the agreement between Lower and Ozment. Therefore, Lower should not be compelled to arbitrate its claim for tortious interference with current and prospective contractual relationships against Amcap.

Additionally, Lower has brought a claim for unjust enrichment against Amcap. However, Lower need not rely on the terms of the agreement between it and Ozment to advance this claim against Amcap. Thus, Lower's claim against Amcap for unjust enrichment is not intertwined. *See Fucci v. Bowser*, No. 2:20-CV-00004, 2023 WL 6391506, at *8 (D. Utah Oct. 2, 2023) (finding that claim for unjust enrichment against nonsignatory was not intertwined with the underlying agreement) (applying Ohio law). Lower should not be compelled to arbitrate its claim for unjust enrichment against Amcap.

Finally, Lower's claim against Amcap for conspiracy to breach a fiduciary duty does not rely on the terms of the underlying agreement such that it is intertwined. *See Fucci*, 2023 WL 6391506, at *8 (finding that claim for breach of fiduciary duty against nonsignatory was not intertwined with the underlying agreement) (applying Ohio law). However, the second exception for intertwined claims applies to this claim. Under the second exception, Ohio's alternate estoppel theory may be applied "when the signatory to the contract [containing the arbitration clause] alleges substantially interdependent and concerted misconduct by both the non-signatory and one or more of the signatories to the contract." *Fucci*, 2023 WL 6391506, at *8 (applying Ohio law).

"The purpose of [concerted misconduct] exception is to prevent 'arbitration proceedings between the two signatories' from being 'rendered meaningless,' thereby thwarting 'the federal policy in favor of arbitration.' *Id.* (citing *Grigson*, 210 F.3d at 527).

Here, Lower has alleged a claim against both Amcap and Ozment for conspiracy to breach a fiduciary duty. However, as discussed *supra*, an arbitrator must determine whether Lower's claim against Ozment for conspiracy to breach a fiduciary duty is arbitrable. Therefore, though the alternate estoppel theory does apply to Lower's conspiracy claim, the Court cannot determine the arbitrability of the claim at this time.

Lastly, Lower's request for a permanent injunction against Amcap is not intertwined. A permanent injunction is not a claim at all, but rather a request for relief that is granted after the claims at issue are either litigated or arbitrated. *See Madej v. Maiden*, 951 F.3d 364 (6th Cir. 2020) ("[A]n injunction is a remedy, not a claim."); *Confessore v. Hood*, No. 1:22-CV-302-MAC-CLS, 2022 WL 21746651, at *4 (E.D. Tex. Oct. 3, 2022), *report and recommendation adopted*, No. 1:22-CV-302, 2022 WL 21746653 (E.D. Tex. Nov. 3, 2022) (permanent injunction was a form of "ultimate relief" sought by the plaintiff). Thus, it does not fall under any theory of alternate estoppel.

Based on the foregoing, the Court concludes the following regarding Lower's claims: 1) Lower's claim against Amcap for tortious interference with current and prospective contractual relationships is not arbitrable; 2) Lower's claim against Amcap for unjust enrichment is not arbitrable; and 3) Lower's claim against Amcap for conspiracy to breach fiduciary duty is intertwined with the Ozment Employment Agreement such that it is arbitrable, so long as an arbitrator finds that Lower's claim against Ozment for conspiracy to breach fiduciary duty is

16

arbitrable. If an arbitrator does not find that Lower's claim against Ozment for conspiracy to breach fiduciary duty is arbitrable, then Lower's claim against Amcap for the same is not arbitrable either. Additionally, Lower's request for a permanent injunction against Amcap is not arbitrable.

### III. Boyd has not moved to compel arbitration, nor has she submitted an arbitration agreement, so claims against her remain in this Court.

"The party seeking to compel arbitration bears the burden of establishing the existence of a written arbitration agreement." *Wisdom v. Experian Info. Sols., Inc.*, No. 4:23-CV-93-ALM-KPJ, 2023 WL 9058868 (E.D. Tex. Nov. 30, 2023), *report and recommendation adopted*, No. 4:23CV93, 2024 WL 23136 (E.D. Tex. Jan. 2, 2024) (citation omitted). A party may meet this burden by submitting a signed agreement between the parties. *Id.*

Ozment alleges that "all Defendants" agree to arbitrate Lower's claims against them (Dkt. #36 at p. 2). And Boyd, along with Mastrorilli and Hankins, indicate in their joint request for an expedited ruling on Ozment's motion to compel arbitration that they have a "strong[] desire to join in the [Ongoing] Arbitration" (Dkt. #53 at p. 1). Additionally, in Mastrorilli's and Hankins' motion for joinder, their counsel states that "[a]lthough I do not represent Natalie Boyd, I am informed that she has an identical arbitration agreement with Lower, LLC" (Dkt. #45 at p. 1).

However, Boyd has not moved to compel arbitration, nor has she submitted any arbitration agreement between herself and Lower. Consequently, the Court concludes that Lower cannot be compelled to arbitrate its claims against Boyd at this time.

## CONCLUSION

For the foregoing reasons, it is **ORDERED** that Defendant Jason Ozment's Motion to Compel Arbitration (Dkt. #29) is **GRANTED**. Plaintiff Lower, LLC's claims against Defendant

Jason Ozment shall be submitted to an arbitrator to determine arbitrability pursuant to the parties' delegation clause.

It is further **ORDERED** that Defendants Kristen Mastrorilli's and Ron Hankins' Joinder in Jason Ozment's Motion to Compel Arbitration (Dkt. #45) is **GRANTED**. Plaintiff Lower, LLC's claims against Defendants Kristen Mastrorilli and Ron Hankins shall be submitted to an arbitrator to determine arbitrability pursuant to the parties' delegation clause.

It is further **ORDERED** that Defendant Amcap Mortgage, Ltd.'s Second Corrected Joinder in Jason Ozment's Motion to Compel Arbitration (Dkt. #32) is **DENIED** in part. Plaintiff Lower, LLC is not compelled to arbitrate its claims against Defendant Amcap Mortgage, Ltd. for 1) tortious interference with current and prospective contractual relationships and 2) unjust enrichment.

It is further **ORDERED** that Defendants Kristen Mastrorilli's, Ron Hankins', and Natalie Boyd's Request for Expedited Ruling on Jason Ozment's Motion to Compel Arbitration (Dkt. #53) is **DENIED** as moot.

It is further **ORDERED** that Defendant Jason Ozment's Corrected Emergency Request for Ruling on Motion to Compel Arbitration (Dkt. #69) is **DENIED** as moot.

**IT IS SO ORDERED.**

SIGNED this 30th day of May, 2024.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE